**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
**ABDERDEEN DIVISION**

IN RE:  **Mary H. Robertson**                          **CASE NO.: 14-14076-JDW**

       **Debtor**                                                        **Chapter 13**

**MOTION FOR RELIEF FROM STAY AND FOR ABANDONMENT**

Comes now SN Servicing Corporation ("Movant/Creditor"), by and through its attorney, Robert S. Coleman, Jr., and for its Motion for Relief from Stay and Abandonment, states as follows:

1.     Mary H. Robertson ("Debtor") filed her Voluntary Petition for Chapter 13 bankruptcy on October 31, 2014.

2.     On May 6, 2004, Mary H. Robertson executed a Disclosure Statement, Note and Security Agreement in favor of Citicorp Trust Bank, FSB in the principal sum of One Hundred Fifty-Nine Thousand Forty-Two Dollars and 38/100 ($159,042.38).  A copy of the Agreement is attached hereto as Exhibit "A" (the "Agreement").

3.     Concurrently, Mary H. Robertson executed and delivered to Citicorp Trust Bank, FSB a Deed of Trust dated May 6, 2004, upon the real property described in the Deed of Trust which is attached hereto as Exhibit "B" (the "Deed of Trust") and hereafter referred to as the "Real Property".

4.     The Deed of Trust was filed for record in the real estate records of Clay County, Mississippi and recorded on May 11, 2004 as Instrument No. 1504.

5.      The Deed of Trust was duly and properly assigned to Movant/Creditor which is attached hereto as Exhibit "C" (the "Assignment").

6.      Per the Debtor's Plan, Debtor proposes to make payment directly to Movant.

7.      After applying the Note payments which have been made previously, the loan is now due for the May 1, 2018, and the principal balance remaining is $152,436.06 plus interest, other charges and attorney's fees.

8.      Movant/Creditor, is prohibited from protecting its interest in foreclosing due to the automatic stay.

9.       Movant/Creditor is entitled to relief from automatic stay in that Debtor has not made all payments the loan is now due for the May 1, 2018 payment.

10.       Pursuant to 11 U.S.C. § 362(d)(1) and § 362(d)(2), sufficient cause exists for the terminating of the automatic stay as to Movant/Creditor, its real property, and the proceeds thereof. Movant/Creditor, is entitled to abandonment of the property pursuant to 11 U.S.C. §554(b) in that the Real Property is of inconsequential value and benefit to the bankruptcy estate.

**WHEREFORE**, the Movant/Creditor, prays:

1.  That it be relieved from the automatic stay pursuant to 11 U.S.C. § 362 and

abandonment of the real property and waive the 14-day stay described by Bankruptcy Rule 4001

(a)(3) so that it may proceed with its regular and customary collection activities.

2.  For such other and further relief to which it may be entitled.


Respectfully submitted,

Marinosci Law Group, P.C.

/s/ Floyd Healy
Floyd Healy
Attorney Bar No.:  2153
1405 North Pierce, Suite 306
Little Rock, AR 72207
T: (501) 663-6200
F: (501) 663-6201
fhealy@sbcglobal.net

## <u>CERTIFICATE OF SERVICE</u>

     I, Robert S. Coleman, Jr., certify that a true and correct copy of the foregoing was placed in the U. S. Mail with sufficient postage affixed hereto, as to guarantee proper delivery to the following on this  10th  day of August, 2018:

| U.S. Trustee's Mailing: | Trustee's Mailing: | Debtor's Attorney: |
|---|---|---|
| U.S. Trustee | Terre M. Vardaman | R. Gawyn Mitchell |
| 501 East Court Street, Suite 6-430 | P.O. Box 1326 | P.O. Box 1216 |
| Jackson, MS 39201 | Brandon, MS 39043 | Columbus, MS 39703-1216 |

     Marinosci Law Group, P.C.

     /s/ Floyd Healy
     Floyd Healy

Disclosure Statement, Note and Security Agreement — Exhibit A

| Borrower(s) (Name and Mailing address) | Lender (Name, address and ZIP code) |
|---|---|
| MARY H ROBERTSON<br>HUGH ROBERTSON<br>1702 NORTHWOOD FOREST BLVD<br>WEST POINT MS 39773 | CITICORP TRUST BANK, FSB<br>100 COMMERCE DRIVE<br>NEWARK DE 19713 |

Date of Loan: 05/06/2004

| ANNUAL PERCENTAGE RATE<br>The cost of Borrower's credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost Borrower. | Amount Financed<br>The amount of credit provided to Borrower or on Borrower's behalf. | Total of Payments<br>The amount Borrower will have paid after Borrower has made all payments as scheduled. |
|---|---|---|---|
| 9.52 % | $ 323,368.42 | $ 159,042.38 | $ 482,410.80 |

**Payment Schedule:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 360 | $ 1,340.03 | MONTHLY BEGINNING 06/11/2004 |
| | $ | |
| | $ | |
| | $ | |

See the contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

Security: If checked, Borrower is giving a security interest in:
[X] Real Property  [ ] Mobile/Manufactured Home
[ ] Other:

Late Charge: If a payment is more than 15 days late, Borrower will be charged 5.0 % of the amount in default.

Prepayment: If Borrower pays off early, Borrower will not be entitled to a refund of part of the finance charge; and [X] may [ ] will not have to pay a penalty.

Demand Feature: None.

**Additional Information:**

| PRINCIPAL | POINTS | BUYDOWN FEE | DATE CHARGES BEGIN |
|---|---|---|---|
| $ 159,376.38 | $ NONE | $ NONE | 05/11/2004 |

**Insurance Disclosure:**

If Borrower grants Lender a security interest as indicated in this document, insurance to protect the Lender's interest in the collateral may be required. If this loan is secured by real property, or mobile/manufactured home, then fire, extended coverage, collision and/or comprehensive casualty insurance is required naming Lender as loss payee, until the loan is fully paid. Additionally, if the property is located in a flood plain, flood insurance will be required. The amount of such insurance must be sufficient to satisfy the unpaid balance of the loan, or be equal to the value of the collateral, whichever is less. Such insurance may be provided through an existing policy or a policy obtained independently and purchased by Borrower. Borrower may obtain such insurance from any insurer that is reasonably acceptable to Lender. If required insurance terminates before the loan is repaid, Borrower promises to obtain acceptable substitute insurance. If Borrower is in default, and Lender demands that Borrower immediately repay the loan in full, Borrower authorizes the insurer providing any required insurance that is financed by Lender in connection with this loan to terminate such policy or coverage, upon request of Lender, and directs that the insurer deliver the premium refund, if any, to the Lender which may at its option apply to the unpaid balance of the loan or return it to Borrower. Any such application of premium refund will not affect the amount or due date of subsequent payments on the loan, but may reduce the number of such payments.

**Payment Waiver Program ("PWP"):**

**Borrower is not required to purchase Payment Waiver protection to obtain credit. Lender's decision to grant credit will not be and is not affected by Borrower's decision to purchase or refuse to purchase optional Payment Waiver Protection.**

Payment Waiver is an optional provision of Borrower's loan agreement and is described and defined in the attached **Payment Waiver Program Addendum**, which is incorporated herein by reference and governs Lender's agreement and Borrower's benefits. In return for a fee billed monthly and added to the scheduled monthly loan payment amount indicated above, and under certain conditions, the Lender will waive the scheduled monthly payment on Borrower's loan agreement and the PWP monthly fee for a period of time upon the occurrence of a Disability or Involuntary Unemployment. The Payment Waiver is not insurance and will not pay the outstanding account balance. Finance Charges accrue on the loan account during any Waiver Period. **Borrower should refer to and inquire about the terms and conditions, including, without limitation, the monthly fee, terms, eligibility, exclusions, termination date, waiting period and maximum waiver limit, contained in the attached PWP Addendum.**

Coverage will not be provided unless Borrower signs and agrees to pay the applicable monthly fee in addition to the loan payment disclosed above.

Unless coverage has been declined (below), I/We request Payment Waiver Program protection as described in the attached PWP Addendum. It is understood that coverage as indicated below will extend solely to the Borrower(s) named on the PWP Addendum (the Covered "BORROWER").

| | Disability and Involuntary Unemployment | Disability Only | Involuntary Unemployment Only | |
|---|---|---|---|---|
| First Borrower | [ ] | [ ] | [ ] | Borrower's Signature ___H. Robertson___ Date 3/6/04 |
| Second Borrower | [ ] | [ ] | [ ] | Borrower's Signature ___Hugh Robertson___ Date 3/6/04 |

PWP Monthly Fee*: $ Coverage declined   First Year's Fee: $ Coverage declined

* Accrued but unpaid fees, if not paid earlier, will be due and payable at the time of the final payment on the loan. However, failure to pay PWP fees may result in termination of coverage.

**TERMS:** In this Disclosure Statement, Note and Security Agreement, the word "Borrower" refers to the persons signing below as Borrower, whether one or more. If more than one borrower signs, each will be responsible, individually and together, for all promises made and for repaying the loan in full. The word "Lender" refers to the lender, whose name and address are shown above.

**PROMISE TO PAY:** In return for a loan that Borrower has received, Borrower promises to pay to the order of Lender the Principal amount shown above, plus interest on the unpaid Principal balance from the Date Charges Begin shown above at the agreed rate of 09.4992 % per annum. Lender will compute interest on the unpaid Principal balance on a daily basis from the date charges begin until Borrower repays the loan. If Borrower does not make sufficient or timely payments according to the payment schedule above, Borrower will incur greater interest charges on the loan. On the N/A month anniversary of the Date of Loan shown above, the rate of interest shall decrease to N/A % per annum on the unpaid Principal balance until the balance is paid in full.

Principal and interest shall be payable in consecutive monthly installments in the amounts shown above, except that any appropriate adjustments will be made to the final payment. The payments shall begin on the first payment date shown above, and shall continue on the same date on each succeeding month, until the Principal balance is fully paid unless this loan is subject to a call provision as indicated herein in which event the final payment date may be accelerated. Upon the final payment date or the acceleration thereof, the entire outstanding balance of Principal, interest and all other charges provided for in this Disclosure Statement, Note and Security Agreement shall, including any accrued but unpaid PWP fees(s), be due and payable. Any payment(s) which Lender accepts after the final payment date or the acceleration thereof do not constitute a renewal or extension of this loan unless Lender so determines. Lender, at its option, may collect interest from and after maturity upon the unpaid Principal balance at the rate of interest prevailing under this Disclosure Statement, Note and Security Agreement at maturity. Each payment will be applied first to interest and fees, computed to the date of payment and the remainder to the balance due (which may include a PWP fee). Each portion of a payment applied to Principal shall be applied first to any recording, appraisal, title insurance and title examination fees, document preparation fees, settlement fees, and other closing fees, with the remainder applied to the PWP monthly fee, if any, and the Principal balance.

Borrower's Initials: MH HR

PWP
21261-2 4/2004 RED        Original (Branch)        Copy (Customer)        Page 1 of 5

Any amount shown above as Points has been paid by Borrower as points, and any amount shown above as a Buydown Fee has been paid by a party other than Borrower as a Buydown Fee. These amounts are considered Prepaid Finance Charge and are in addition to interest at the indicated rates. Any Points or Buydown Fee are earned prior to any other interest on the loan balance. Prepaid Points and/or Buydown Fees are not refundable to Borrower or any other party.

**PREPAYMENT:** Borrower may make a full or partial prepayment of the unpaid Principal balance at any time (check applicable box):

☐ without penalty.

☒ if this loan is secured primarily by a Mortgage or Deed of Trust on residential real property and Borrower prepays this loan in full during the first three (3) years from the Date of Loan, Borrower agrees to pay a prepayment fee, in addition to any accrued interest and charges, calculated on the average balance of the principal obligation outstanding as of the last business day of each month for the prior six (6) months, or such lesser period as shall have elapsed from the Date of Loan as follows:

1. If prepaid in full within one year of the Date of Loan, a fee of 3%.
2. If prepaid in full within two years of the Date of Loan, a fee of 2%.
3. If prepaid in full within three years of the Date of Loan, a fee of 1%.

If prepayment occurs after three (3) years from the Date of Loan, there will be no prepayment fee.

When Borrower makes a prepayment, Borrower will tell Lender in a letter that Borrower is doing so. Lender will use Borrower's prepayments to reduce the amounts of unpaid interest and charges and the amount of principal that Borrower owes under this Note. Partial prepayment will not affect the amount or due date of subsequent scheduled payments on the loan, unless Lender agrees in writing to any such delay or change, but may reduce the number of such payments. Borrower understands if the terms of this paragraph provide for a prepayment penalty, such terms do not apply to a renewal or refinancing of this loan by Lender, nor to the prepayment of this loan from the proceeds of any loan made in the future by Lender to Borrower. No prepayment charge will be collected if the loan is accelerated due to Lender's exercise of any due on sale clause in the Mortgage or Deed of Trust securing this obligation.

*Borrower acknowledges by initialing here that Borrower has read and understands the provisions as set forth above for whether or not a prepayment fee, or penalty, may be imposed on Borrower's loan.*

**SECURITY AGREEMENT:**

☐ A. If this box is checked, this loan is unsecured.

☐ B. If this box is checked, to secure the payment and performance hereof, Borrower gives to Lender a security interest under the Uniform Commercial Code in any property for which a description is completed below and all parts and equipment now or later added to the property and any proceeds of the property, all which will be called "Property". See below for additional terms applicable to this security interest.

1. Mobile/Manufactured Home:

| Make | Year/Model | Model No. Or Name | Body Type | Identification Number |
|------|-----------|-------------------|-----------|----------------------|
|      |           |                   |           |                      |

2. Other Property:

☒ C. If this box is checked, Borrower's loan is secured by a Deed of Trust or Mortgage of even date on real property which requires Lender's written consent to a sale or transfer of the encumbered real property located at    1702 NORTHWOOD FOREST BLVD
WEST POINT MS 39773                        . See either the Deed of Trust or the Mortgage for terms applicable to Lender's interest in Borrower's real property ("Property").

**OWNERSHIP OF PROPERTY:** Borrower represents that the Property is owned by Borrower free and clear of all liens and encumbrances except those of which Borrower has informed Lender in writing. Prior to any default, Borrower may keep and use the Property at Borrower's own risk, subject to the provisions of the Uniform Commercial Code. If the Property includes a mobile or manufactured home, Borrower will, upon request, deliver the certificate of title, if any, to the home to Lender.

**USE OF PROPERTY:** Borrower will not sell, lease, encumber, or otherwise dispose of the Property without Lender's prior written consent. Borrower will keep the Property at Borrower's address (as shown on page 1) unless Lender has granted permission in writing for the Property to be located elsewhere. The Property will be used only in the state in which Borrower lives. Borrower will not use or permit the use of the Property for hire or for illegal purposes.

**TAXES AND FEES:** Borrower will pay all taxes, assessments, and other fees payable on the Property, this Disclosure Statement, Note and Security Agreement, or the loan. If Borrower fails to pay such amounts, Lender may pay such amounts for Borrower and the amounts paid by Lender will be added to the unpaid balance of the loan.

**REQUIRED INSURANCE:** If Borrower fails to obtain or maintain any required insurance or fails to designate an agent through whom the insurance is to be obtained, Lender may purchase such required insurance for Borrower through an agent of Lender's choice, and the amounts paid by Lender will be added to the unpaid balance of the loan. In any such event, Borrower understands and acknowledges that (1) the insurance company may be affiliated with Lender, (2) Lender's employee(s) may be an agent for the insurance company, (3) such employee(s) is not acting as the agent, broker or fiduciary for Borrower on this loan, but may be the agent of the insurance company, and (4) Lender or the insurance company may realize some benefit from the sale of that insurance.

**FINANCING STATEMENTS:** Borrower will sign all financing statements, continuation statements, security interest filing statements, and similar documents with respect to the Property at Lender's request.

**LATE CHARGE:** If a payment is more than 15 days late, Borrowers agree to pay a late charge of 5.0 % of the amount of the unpaid amount of the installment in default. Lender may, at its option, waive any late charge or portion thereof without waiving its right to require a late charge with regard to any other late payment.

**RETURNED PAYMENT FEE:** Lender may charge Borrower a fee of $ 10.00 , plus actual expenses incurred, for each check, draft, order of withdrawal or like instrument or payment order given to Lender by Borrower or by Borrower's agent in connection with this loan that is not honored because of insufficient or uncollected funds or because no such account exists.

**LOAN CHARGES:** If a law that applies to this loan and that sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under this loan or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge.

**DEFAULT:** Borrower will be in default if:
1. Borrower does not make any scheduled payment on time;
   Borrower is (or any other person puts Borrower) in bankruptcy, insolvency or receivership;
2. Any of Borrower's creditors attempts by legal process to take and keep any property of Borrower, including the Property securing this loan;
3. Borrower fails to fulfill any promise made under this agreement; or
4. A default occurs under any Real Estate Mortgage or Deed of Trust which secures this loan or under any other mortgage or deed of trust on the
5. real property.

Subject to Borrower's right to any notice of default, right to cure default, and any other applicable laws, if Borrower defaults, Lender may require Borrower to repay the entire unpaid Principal balance, any accrued interest, and all other charges for which Borrower is obligated at once. Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default. Lender's failure to exercise or

delay in exercising any of its rights when default occurs does not constitute a waiver of those or any other rights under this agreement. If this debt is referred for collection to an attorney not a salaried employee of Lender, Borrower is entitled to repay, to the extent permitted by law, all reasonable costs and expenses of collection, including, but not limited, court costs and attorney's fees actually incurred. If Lender obtains a judgment against Borrower, interest shall accrue on the judgment amount at the agreed rate of interest applicable to the loan, unless otherwise stated in the judgment order. Notice to residents of Alaska: Borrower is personally obligated and fully liable for the amount due under the note. Lender has the right to sue on the note and obtain a personal judgment against the Borrower for satisfaction of the amount due under the note, either before or after a judicial foreclosure of the Deed of Trust under AS Section 09.45.170 through .220.

If any insurance coverage is obtained at Lender's office, upon Lender's default, Borrower hereby gives Lender a power of attorney to cancel part or all of that insurance and to apply any returned premiums to Borrower's unpaid balance. Lender may exercise its option to accelerate during any default by Borrower regardless of any prior forbearance, acceptance of late payments or late charges, or waiver of any rights. If this loan is secured by a mobile home, at least 30 days before Lender takes action to accelerate the unpaid balance or to repossess or sell the mobile home as a result of Borrower's default, Lender will provide a written notice to Borrower concerning the default and Borrower's right to cure the default. Lender is not obligated to give Borrower more than two such notices in a 12-month period.

**EFFECTS OF DEFAULT:** If Borrower defaults, Borrower will deliver the Property to Lender or, upon Lender's demand, assemble the Property and make it available to Lender at a reasonably convenient place. Lender may, without previous notice or demand and without legal process, peacefully enter any place where the Property is located and take possession of it.

The Property may be sold with notice at a private or public sale at a location chosen by Lender. At such a sale, Lender may purchase the Property. The proceeds of the sale, minus the expenses of taking, storing and selling the Property, including attorney's fees, court costs and other collection expenses, and minus the cost of paying off and removing any superior liens or claims on the Property, will be credited to the unpaid balance of Borrower's loan. If the proceeds of the disposition are insufficient to pay off the entire balance, Borrower agrees to pay any remaining balance upon demand. If Borrower has left other property in the repossessed Property, Lender may hold such property temporarily for Borrower without any responsibility or liability for the property.

Notice of the time and place of a public sale or notice of the time after which a private sale will occur is reasonable if mailed to the Borrower's address at least five days before the sale. The notice may be mailed to Borrower's last address shown on Lender's records.

**LAW THAT APPLIES:** Federal law and Delaware law, as applicable, govern this Disclosure Statement, Note and Security Agreement. If any part is unenforceable, this will not make any other part unenforceable. In no event will Borrower be required to pay interest or charges in excess of those permitted by law.

**OTHER RIGHTS:** Lender may accept payments after maturity or after a default without waiving its rights with respect to any subsequent default in payment. Borrower agrees that Lender may extend time for payment after maturity without notice. The terms of this agreement can be waived or changed only in a writing signed by Lender.

Where the context requires, singular words may be read in the plural and plural words in the singular, and references to the masculine gender may be read to apply to the feminine gender.

**OTHER TERMS:** Each Borrower agrees that Lender can change the repayment terms and release any Property securing the loan, or add parties to or release parties from this agreement without notice to any other Borrower and without releasing any other Borrower from his responsibilities. Lender does not have to notify Borrower before instituting suit if the note is not paid, and Lender can sue any or all Borrowers upon the default by any Borrower.

Borrower, endorsers, sureties and guarantors, to the extent permitted by law, severally waive their right to require Lender to demand payment of amounts due, to give notice of amounts that have not been paid, to receive notice of any extensions of time to pay which Lender allows to any Borrower and to require Lender to show particular diligence in bringing suit against anyone responsible for repayment of this loan, and additionally, waive benefit of homestead and exemption laws now in force or later enacted, including stay of execution and condemnation, on any Property securing this loan and waive the benefit of valuation and appraisement.

This Disclosure Statement, Note and Security Agreement shall be the joint and several obligation of all makers, sureties, guarantors and endorsers and shall be binding upon them, their heirs, successors, legal representatives and assigns. Oral agreements or commitments to loan money, extend credit, or to forbear from enforcing repayment of a debt, including promises to extend or renew such debts, are not enforceable. To protect Borrower and Lender from misunderstanding or disappointment, any agreements Borrower and Lender reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between Borrower and Lender, except as Borrower and Lender may later agree in writing to modify it.

If any part of the Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and accompanying Itemization of Amount Financed is unenforceable, this will not make any other part unenforceable.

**REFINANCING:** Borrower has been advised by Lender that the overall cost of refinancing an existing loan balance may be greater than the cost of keeping the existing loan and obtaining a second loan for any additional funds Borrower wishes to borrow.

(Intentionally left blank)

Borrower's Initials:

## NOTICE OF ARBITRATION PROVISION

THIS ARBITRATION PROVISION PROVIDES THAT ALL DISPUTES BETWEEN BORROWER AND LENDER, EXCEPT THOSE SPECIFIED BELOW, WILL BE RESOLVED BY MANDATORY, BINDING ARBITRATION. YOU THUS GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS (EXCEPT FOR MATTERS THAT ARE EXCLUDED FROM ARBITRATION AS SPECIFIED BELOW). YOUR RIGHTS WILL BE DETERMINED BY A NEUTRAL ARBITRATOR AND NOT A JUDGE OR JURY. YOU ARE ENTITLED TO A FAIR HEARING, BUT THE ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT.

In consideration of Lender making the extension of credit described above and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, You and We agree that either You or We have an absolute right to demand that any Claim be submitted to an arbitrator in accordance with this Arbitration Provision. If either You or We file a lawsuit, counterclaim, or other action in court, the other party has the absolute right to demand arbitration following the filing of such action.

**Definitions for Arbitration Provision.** As used in this Arbitration Provision ("Provision"), the following definitions will apply:
"You" or "Your" means any or all of Borrower(s) listed above and Non-Obligor(s) who execute this Disclosure Statement, Note and Security Agreement, and their heirs, survivors, assigns, and representatives.
"We" or "Us" or "Our" means the Lender under this Disclosure Statement, Note and Security Agreement listed above, its past, present or future respective parents, subsidiaries, affiliates, predecessors, assignees, successors, and their respective employees, agents, directors, and officers (whether acting in their corporate or individual capacity).
"Credit Transaction" means any one or more past, present, or future extensions, applications, or inquiries of credit or forbearance of payment such as a loan, retail credit agreement, or otherwise from any of Us to You.
"Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You and Us. A Claim includes, without limitation, anything related to:

- This Provision, its enforceability, or the arbitrability of any Claim pursuant to this Provision, including but not limited to the scope of this Provision and any defenses to enforcement of the Disclosure Statement, Note and Security Agreement or this Provision;
- Any Credit Transaction;
- Any past, present, or future insurance, service, or other product that is offered or purchased in connection with a Credit Transaction;
- Any documents or instruments that contain information about any Credit Transaction, insurance, service, or product;
- Any act or omission by any of Us;
- Fraud or misrepresentation, including claims for failing to disclose material facts;
- Any federal or state statute or regulation, or any alleged violation thereof, including without limitation insurance, usury, and lending laws;
- Any party's execution of this Provision and/or willingness to be bound by its terms and provisions; or
- Any dispute about closing, servicing, collecting, or enforcing a Credit Transaction.

"Rules" means the then applicable rules and procedures that govern consumer disputes for the chosen "Administrator" (as defined below).

**Agreement to Arbitrate Claims.** Upon written request by either party that is submitted according to the Rules for arbitration, any Claim, except those specified below in this Provision, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the then applicable Rules of the chosen "Administrator", and (iii) this Provision, unless We and You both agree in writing to forgo arbitration. The terms of this Provision shall control over any inconsistency between the Rules of the Administrator and this Provision. The party initiating the arbitration must choose one of the three following arbitration firms ("Administrator") and follow the Rules for initiating and pursuing an arbitration:

| | | |
|---|---|---|
| JAMS | American Arbitration Association | National Arbitration Forum |
| 1920 Main Street, Suite 300 | 335 Madison Avenue, Floor 10 | P.O. Box 50191 |
| Irvine, CA 92610 | New York, NY 10017-4605 | Minneapolis, MN 55405 |
| www.jamsadr.com | www.adr.org | www.arbitration-forum.com |

You may obtain a copy of the Rules and a form of demand for arbitration for each Administrator by contacting the Administrator or by accessing the Administrator's internet site. We or You may bring an action, including a summary or expedited proceeding, to compel arbitration of any Claim, and/or to stay the litigation of any Claim pending arbitration, in any court having jurisdiction. Such action may be brought at any time, even if a Claim is part of a lawsuit, up until the entry of a final judgment. You and We also agree to submit to final, binding arbitration not only all Claims, but also any claim or dispute You or We have against (i) all persons and/or entities involved with any Credit Transaction or any other matter relating to this Disclosure Statement, Note and Security Agreement, (ii) all persons and/or entities who signed or executed any document relating to any Credit Transaction or Claim, and (iii) all persons and/or entities who may be jointly or severally liable to either You or any of Us regarding any Claim.

**Judgment.** Judgment upon any arbitration award may be entered in any court having jurisdiction. If timely requested by either party, the arbitrator shall provide a brief written statement of the reasons for any award.

**Claims Excluded from Arbitration.** Neither You nor We may require the other to arbitrate the following types of matters:

- Any action to the extent necessary to obtain a judicial order for the purpose of (a) effecting a foreclosure or transferring title being foreclosed, or permitting exercise of extra-judicial or self-help repossession under applicable law, with respect to an interest in property, or (b) establishing, perfecting or clearing title, with respect to an interest in property.
- Any Claim where all parties collectively (including multiple named parties) seek monetary relief in the aggregate of $15,000.00 or less in total relief, including but not limited to compensatory, statutory and punitive damages, restitution, rescission, disgorgement, costs and fees (including attorneys' fees); or any Claims brought in small claims court. Any Claims asserted on behalf of a putative class of persons, will, for purposes of this exclusion, be deemed to exceed $15,000.00. In the event that any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.00, unless the matter remains in and subject to the jurisdiction of the small claims court.

Participating in a lawsuit or seeking enforcement of this section by a court shall not waive the right to arbitrate any other Claim.

**Additional Terms.**

Administration of Arbitration. Arbitration shall be administered by the chosen Administrator, but if said Administrator is unable or unwilling to administer the arbitration, then an alternate Administrator shall be chosen by the party initiating the arbitration and that Administrator shall administer any arbitration required under this Provision pursuant to its Rules. The arbitrator shall make his or her decision in accordance with the applicable law, and shall be empowered to award any damages or other relief provided for under the applicable law.

Place of Arbitration. The arbitration shall be conducted in the county of Your residence, unless all parties agree to another location.

Appeal. Either You or We may appeal the arbitrator's award in accordance with the then applicable Optional Appeals Procedures of JAMS or in accordance with procedures otherwise agreed to by You and Us, and the award may be subject to judicial review on the grounds stated in 9 U.S.C. § 10.

No Class Actions/No Joinder of Parties. You agree that any arbitration proceeding will only consider Your Claims. Claims by or on behalf of other borrowers will not be arbitrated in any proceeding that is considering Your or Our Claims. Because You have agreed to arbitrate all Claims, You may not serve as a class representative or participate as a class member in a putative class action against any party entitled to compel arbitration under this Provision.

Depositions. After a demand for arbitration is made, You and We may conduct a limited number of depositions by mutual agreement. Any disagreements concerning the taking of depositions will be resolved by the arbitrator.

Costs. Unless the Rules of the Administrator require allocation more beneficial to You, the cost of any arbitration proceeding shall be divided as follows:

- The party making demand upon the Administrator for arbitration shall pay to the Administrator the filing fee required by the Rules when the demand is made, except that We will pay the amount of the filing fee in excess of the amount of the fee that would be required for You to file a lawsuit in Your jurisdiction. In addition, We will pay to the Administrator all other administrative costs of the arbitration proceeding. However, the arbitrator may award Us, in accordance with Rules, the excess amount of any such filing fee and any other arbitration administrative costs We incur if the arbitrator determines that the Claim was made in bad faith or lacks any justification on Your part. Despite our agreement to pay costs and fees described above, you have the option to pay Your share of filing fees and administrative costs consistent with the applicable Rules.

• Each party shall pay his/her own attorney, expert, and witness fees and costs unless otherwise required by law or by other terms of this Disclosure Statement, Note and Security Agreement.

**Governing Law.** This Provision is governed by federal law and by the laws of the state where the closing of the Credit Transaction took place, but only to the extent that such state laws are consistent or compatible with federal law.

**Interpretation.** Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of this Provision under which arbitration is sought, shall be submitted to and ruled on by the arbitrator, unless the relevant law requires that a court of competent jurisdiction make such determinations. The arbitrator has the authority to determine jurisdiction and arbitrability prior to conducting a full hearing on the merits.

**Severability.** If the arbitrator or any court determines that one or more terms of this Provision or the Rules are unenforceable, or would make this Provision unenforceable, only such terms(s) shall be deemed unenforceable and shall be deemed stricken from this Provision, but such determination shall not impair or affect the enforceability of the other terms of this Provision or the Rules.

**Survival.** This Provision applies even if the Disclosure Statement, Note and Security Agreement has been paid in full, charged off by us, or discharged in bankruptcy.

**Special Acknowledgments.** You understand and acknowledge by signing Your name to this Provision that (i) a court and/or jury will **not** hear or decide any Claim governed by this Provision, (ii) the funding for Your Credit Transaction will come in whole or in part from sources outside this state, which will involve commerce within the meaning of the United States Arbitration Act, 9 U.S.C. §§1 et seq., as amended, (iii) discovery in an arbitration proceeding can be much more limited than in a court proceeding, and (iv) rights to appeal an arbitration award are very limited.

**READ THE ABOVE ARBITRATION PROVISION CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO OBTAIN REDRESS THROUGH COURT ACTION.**

_____ (Seal)
MARY H ROBERTSON                                        -Borrower

_____ (Seal)
HUGH ROBERTSON                                          -Borrower

The following notice applies only if this box is checked. ☐

### NOTICE

**ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

By signing below, Borrower agrees to the terms contained herein, acknowledges receipt of a copy of this Disclosure Statement, Note and Security Agreement and, if applicable, the Mortgage or Deed of Trust and of the accompanying Itemization of Amount Financed, and authorizes the disbursements stated therein.

WITNESSES:                                                SIGNED:

_____          _____ (Seal)
                                                          MARY H ROBERTSON                              -Borrower

_____          _____ (Seal)
                                                          HUGH ROBERTSON                                -Borrower

_____          _____ (Seal)
                                                                                                                    -Borrower

                                                          CITICORP TRUST BANK, FSB

                                                          By: _____
                                                                        (Name and Title)

COMPLETE FOR LOANS TO LOUISIANA RESIDENTS ONLY:
                                                          Ne Varietur
For Identification with an Act of Mortgage passed before me this _____ day of _____ , _____.

                                                          at _____ , Louisiana

                                                          Notary Public

                                                          Notary Public of Parish _____ , Louisiana

SECURITY INTEREST OF NONOBLIGOR: Borrower only is personally liable for payment of the loan. Nonobligor is liable and bound by all other terms, conditions, covenants, and agreements contained in this Disclosure Statement, Note and Security Agreement, including but not limited to the right and power of Lender to repossess and sell the Property securing this loan, in the event of default by Borrower in payment of this loan.

_____ (Seal)          _____ (Seal) _____
Signature                                        Date          Signature                                        Date

This Rider Amends The Loan Agreement/Promissory Note Entered Into On Date Below

## Agreed Rate Reduction Rider

| Borrower(s) (Name and mailing address) | Lender (Name, address, city and state) | Account No. |
|---|---|---|
| MARY H ROBERTSON<br>HUGH ROBERTSON<br>1702 NORTHWOOD FOREST BLVD<br>WEST POINT MS 39773 | CITICORP TRUST BANK, FSB<br><br>100 COMMERCE DRIVE<br>NEWARK DE 19713 | Date of Loan<br>05/06/2004 |

Borrower has agreed to pay the rate of interest set forth in the Note (the "Note Rate") until the full amount of principal has been paid. However, if on any one of the second, third or fourth anniversaries of the scheduled due date of the first full installment payment due under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate to _____ 9.00 _____ %. Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly payments under the Note before the date the next payment was due; (b) has never been late by 3 months or more in making any monthly payments due under the Note; (c) neither Borrower nor Co-Borrower has filed petitions in bankruptcy during the term of the loan; and (d) no provision of the Note has been modified prior to the Anniversary Date. Modifications to the Note include deferment of a scheduled payment, legal action with respect to enforcement of the Note or the Mortgage, and an adjustment of the loan terms. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect on the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the Rate Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Agreed Rate Reduction Rider.

Borrower

Date 5/6/04

Co-Borrower

Date 5/6/04

## ANNUAL PERCENTAGE RATE/PREPAYMENT CHARGE OPTION

Borrower:  MARY H ROBERTSON
HUGH ROBERTSON

Lender:  CITICORP TRUST BANK, FSB

100 COMMERCE DRIVE
NEWARK DE 19713

Account Number:

This Annual Percentage Rate/Prepayment Charge Option disclosure relates to Borrower's loan transaction with Lender, as indicated by the Account Number above, and to the terms of the Disclosure Statement, Note and Security Agreement that Borrower will sign at closing.

[__]    _____/_____ (applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is   10.02  , and Borrower may make a full or partial prepayment of the unpaid principal balance at any time without a prepayment charge, as reflected in Borrower's Disclosure Statement, Note and Security Agreement.

[ X ]    _____/ HK (applicable if checked and initialed) The annual percentage rate (APR) on Borrower's loan is   9.52  , and Borrower's loan is subject to a prepayment charge according to the provisions in Borrower's Disclosure Statement, Note and Security Agreement.

Borrower acknowledges reading and selecting an annual percentage rate/prepayment charge option by providing Borrower's initials next to the applicable box checked above and signing below.

_____
Signature of Borrower                                    Date

_____
Signature of Borrower                                    Date



## ALLONGE FOR THE PURPOSE OF NOTE ENDORSEMENT

This Allonge is effective as of _____ **AUG   7 2015** _____ and is to be attached to and made a part of that
certain NOTE further described herein;

Note Date:                **05/06/2004**
Original Note Amount:      **$159,376.38**
Executed By/Borrower(s):   **MARY H ROBERTSON AND HUGH ROBERTSON**
Payee/Beneficiary:         **CITICORP TRUST BANK, FSB**
Property Address:          **1702 NORTHWOOD FOREST BLVD, WEST POINT, MS, 39773**

It is to be read together with, and is hereby incorporated by reference in, the attached instrument, and contributes an integral part
thereof.


WITHOUT RECOURSE, PAY TO THE ORDER OF:

**Stanwich Mortgage Acquisition Company II, LLC**


Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage Loan Trust, Series 2012-12
By: Stanwich Mortgage Acquisition Company II, LLC, its appointed Attorney-In-Fact

By: _____
Name: Troy Grande
Title:   Authorized Signatory

## ALLONGE FOR THE PURPOSE OF NOTE ENDORSEMENT

This Allonge is effective as of **AUG , 7 2015** _____ and is to be attached to and made a part of that certain NOTE further described herein;

Note Date: **05/06/2004**
Original Note Amount: **$159,376.38**
Executed By/Borrower(s): **MARY H ROBERTSON AND HUGH ROBERTSON**
Payee/Beneficiary: **CITICORP TRUST BANK, FSB**
Property Address: **1702 NORTHWOOD FOREST BLVD, WEST POINT, MS, 39773**

It is to be read together with, and is hereby incorporated by reference in, the attached instrument, and contributes an integral part thereof.

WITHOUT RECOURSE, PAY TO THE ORDER OF:

**US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE PRP II PALS INVESTMENTS TRUST**

Stanwich Mortgage Acquisition Company II, LLC

By: _____

Name: Troy Grande
Title: Authorized Signatory



# *Chesapeake Appraisal & Settlement Services*

**A Member of Citigroup**

# DOCUFILE

| | |
|---|---|
| **CLIENT:**  CITICORP TRUST BANK, FSB | **CONTACT:**  GARETH BEVARD |
| | **PHONE:**  770-850-1701 |
| **ADDRESS:**  2161 NEW MARKET PKWY. STE | **ORDER #:**  |
| NEW MARKET BUSINESS PARK | **LOAN #:** |
| AGACCC - MARIETTA, GA 30067 | |

**DATE OF RECORDING:**      05/11/04                    **EFFECTIVE DATE OF RECORDING:**      05/11/04

## CUSTOMER INFORMATION

**CUSTOMER NAME:**      MARY ROBERTSON AND HUGH ROBERTSON

**PROPERTY ADDRESS:**      1702 NORTHWOOD FOREST BLVD
P O BOX 781 MAILING ADDRESS
WEST POINT, MS 39773

**ON      05/11/04**      , WE RECORDED YOUR MORTGAGE EFFECTIVE THROUGH      05/11/04
WITH THE AUTHORIZATION OF
THE FOLLOWING CHANGE WAS NOTED FROM THE ORIGINAL REPORT DATED      04/20/04
Mortgage dropped off on 5/11/4 in the amount of $159,376.38. Reissue rate with previous loan amount of
$149,136.53. Mary signed aka Mary H Robertson

THIS DOCUFILE HAS BEEN PREPARED FOR YOUR CONFIDENTIAL USE ONLY.

THANK YOU FOR USING THE PROFESSIONALS AT CHESAPEAKE

*7090 SAMUEL MORSE DRIVE, COLUMBIA, MD 21046-3405*

Prepared by beneficiary:

Citicorp Trust Bank, fsb
P.O. Box 140759
Irving, TX 75014

770 850-1701

INSTRUMENT NO. **1504**

Exhibit B

# DEED OF TRUST

THIS DEED OF TRUST is made this   6th   day of   May   ,   2004   , among the Grantor,
MARY ROBERTSON A/K/A MARY H. ROBERTSON AND HUGH ROBERTSON

herein ("Borrower"),
Debera Bridges                                                                                          (herein
"Trustee"), and the Beneficiary, CITICORP TRUST BANK, FSB
a federal savings bank chartered           under the laws of  the United States of America           ,
whose address is  100 COMMERCE DRIVE  NEWARK DE 19713                                          (herein
"Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and
conveys to Trustee, in trust, with power of sale, the following described property located in the County of
CLAY                            , State of Mississippi:

INDEXING INSTRUCTIONS

LOT 77, WESTWOOD SUBDIVISION, PART 3.

Begin legal description here.

SEE ATTACHED EXHIBIT A

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights,
appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such
rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the
foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter
referred to as the "Property";

42

## EXHIBIT A

THE FOLLOWING DESCRIBED REAL ESTATE LOCATED IN CLAY COUNTY, MISSISSIPPI, TO WIT:

COMMENCING AT A POINT ON THE WEST RIGHT-OF-WAY LINE OF U. S. HIGHWAY 45 ALTERNATE SAID POINT BEING 33 FEET WEST OF THE SOUTHEAST CORNER OF SECTION TWENTY-EIGHT (28), TOWNSHIP SIXTEEN (16) SOUTH, RANGE SIX (6) EAST, CLAY COUNTY, MISSISSIPPI; RUN THENCE
NORTH ALONG SAID RIGHT-OF-WAY LINE A DISTANCE OF 2660.5 FEET; RUN THENCE SOUTH 88 DEGREES 40 MINUTES WEST A DISTANCE OF 625 FEET; RUN THENCE NORTH 89 DEGREES 25 MINUTES WEST A DISTANCE OF 1215 FEET; RUN THENCE NORTH 87 DEGREES 05 MINUTES WEST A DISTANCE
OF 700 FEET; RUN THENCE SOUTH 89 DEGREES 43 MINUTES WEST A DISTANCE OF 849.5 FEET TO THE NORTHEAST CORNER OF A LOT HEREIN CONVEYED THE POINT OF BEGINNING OF THIS DESCRIPTION; FROM SAID POINT OF BEGINNING RUN THENCE SOUTH 0 DEGREES 17 MINUTES EAST A
DISTANCE OF 822.6 FEET TO THE NORTH RIGHT-OF-WAY OF A GRAVEL ROAD; RUN THENCE WESTERLY ALONG SAID RIGHT-OF-WAY A DISTANCE OF 158.6 FEET; RUN RUN THENCE NORTH 0 DEGREES 17 MINUTES WEST A DISTANCE OF 827.5 FEET; RUN THENCE NORTH 89 DEGREES 43 MINUTES EAST A DISTANCE OF 158.5 FEET TO THE POINT OF BEGINNING, BEING FURTHER DESCRIBED AS LOT ELEVEN (11) OF NORTHWOOD FORREST SUBDIVISION AS SHOWN BY A MAP AND PLAT OF SAID SUBDIVISION AS DRAWN BY TUMLINSON ENGINEERS, INC., OF WEST POINT, MISSISSIPPI, BEING LOCATED IN THE SOUTHEAST CORNER OF SECTION TWENTY-EIGHT (28), TOWNSHIP SIXTEEN (16) SOUTH, RANGE SIX (6) EAST, CLAY COUNTY, MISSISSIPPI, AND CONTAINING 3.00 ACRES, MORE OR LESS.
INDEXING INSTRUCTIONS:
LOT 77, WESTWOOD SUBDIVISION, PART 3.

BY FEE SIMPLE DEED FROM WILLIE DAVID MCCLUNG AND WIFE, MARY J. MCCLUNG AS SET FORTH IN BOOK 227, PAGE 506 DATED 08/16/2000 AND RECORDED 08/18/2000, CLAY COUNTY RECORDS, STATE OF MISSISSIPPI.

43

TO **the** order of **Lender** in the principal sum of **U.S. $** of Borrower's note dated _____ and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ _____ with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on   05/11/2034   ; the payment of all sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease  this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development  orrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the c  'ominium or planned unit development, the by-laws and regulations of the condominium or planned unit developmen  nd constituent documents.

**7. Protection of Lender's Security.** If Borrower fail  '.erform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commence  ich materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower  make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necess  'n protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this 1  l of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requ  ment for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

44

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or mailing such notice by certified mail addressed to Borrower at the Property address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

If Lender invokes the power of sale, Lender shall send to Borrower, in the manner provided in paragraph 12 hereof, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in CLAY County as Trustee designates the notice of sale in one or more parcels and in such order as Trustee may determine. Lender or Lender's designee may purchase the Property at any sale.

45

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust, due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to the earlier to occur of (i) sale of the Property pursuant to the power of sale contained in this Deed of Trust or (ii) entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Deed of Trust, Lender or Trustee shall cancel this Deed of Trust without charge to Borrower. If Trustee is requested to cancel this Deed of Trust, all notes evidencing indebtedness secured by this Deed of Trust shall be surrendered to Trustee.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by instrument recorded in the county in which this Deed of Trust is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

**22. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 22, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 22, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

(Intentionally Left Blank)

46

REQUEST FOR NOTICE OF DEFAULT
AND FORECLOSURE UNDER SUPERIOR
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, with a copy to P. O. Box 17170, Baltimore, MD 21203, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____
MARY ROBERTSON A/K/A MARY H. ROBERTSON                    -Borrower

_____
HUGH ROBERTSON                                            -Borrower

STATE OF __Mississippi__, __Lowndes__ County ss:

On this __6TH__ day of __MAY__ , 2004 personally appeared before me, the undersigned authority in and for said County and State, the within named __Angela R Powell__ __a notary__, who acknowledged that ____ he ____ signed and delivered the foregoing instrument on the day and year therein mentioned.

Given under my hand and seal of office.

My Commission expires: _____

_____
Notary Public

Mississippi 2420-4  1/98        Original (Recorded)   Copy (Branch)   Copy (Customer)        Page 5 of 5
──── Below This Line Reserved For Lender and Recorder ────

47

THE STATE OF MISSISSIPPI
County of Clay

I, Harmon A. Robinson, Clerk of the Chancery Court in and for said County and State, do hereby certify that the within instrument was filed in this office for the record on the __11__ day of __May__ ,20__04__ , at __10:19__ o'clock __A__.M. and the same was duly recorded in __LM__ Record __342__ Page __42__ , on this __11__ day of __May__ 20 __04__. Given under my hand and seal of office at West Point, Mississippi.

By _____ , D.C.
HARMON A. ROBINSON, Chancery Clerk

Exhibit C

**Record & Return To:**
**Corporation Service Company**
**P.O. Box 3008**
**Tallahassee, FL 32315**
**800-927-9801**

Prepared By:
PRP II Pals, LLC
7144 E Stetson Dr., Suite 410
Scottsdale, AZ 85251
Prepared by: Jack Krupey

**FILE 1ST**

MS, Clay

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned,
**Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage
Loan Trust, Series 2012-12**, 500 Delaware Avenue, 11th Floor, Wilmington, DE, 19801, herein ("Assignor"), does
hereby grant, sell, assign, transfer and convey, without recourse unto **Stanwich Mortgage Acquisition Company II,
LLC**, c/o The Palisades Group LLC, 11755 Wilshire Blvd, Suite 1700, Los Angeles, CA 90025 herein ("Assignee")
that certain DEED OF TRUST recorded in **Clay County, MS** referenced below;

**Borrower: MARY ROBERTSON A/K/A MARY H ROBERTSON AND HUGH ROBERTSON**
**Original Lender: CITICORP TRUST BANK, FSB**
**Dated: 05/06/2004      Recorded: 05/11/2004**
**Book: 342      Page: 42**
**Loan Amount: $159,376.38**
Property:      **1702 NORTHWOOD FOREST BLVD, WEST POINT, MS 39773**

**Legal description is attached hereto and made a part hereof**

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon,
with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the document above-described.

**Book LM 477 Pg 32**
**Instrument 2929**

Page 2
Loan #: ███████

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective
_8/7/2015_

Christiana Trust, A Division of Wilmington Savings Fund
Society, FSB, as trustee for Stanwich Mortgage Loan Trust,
Series 2012-12
By: Stanwich Mortgage Acquisition Company II, LLC, its
appointed Attorney-In-Fact

assignor ph:
424-280-7560

assignee ph:
424.280.7560

By: _____
Name:    Troy Grande
Title:    Authorized Signatory

A notary public or other officer completing this certificate verifies only the identity of the individual who signed
the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On _8/7/2015_ before me, A. Werner, Notary Public, personally appeared Troy Grande, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

G. Werner

Notary Public: A. Werner
My Comm. Expires: 02/08/2019

```
A. WERNER
Commission # 2099443
Notary Public - California
Los Angeles County
My Comm. Expires Feb 8, 2019
```


Clay County Mississippi
Filed 09/08/2015 03:18 P
Book LM 477 Pg 32
Amv Berry. Chancery Clerk

**Book LM 477 Pg 33**
**Instrument 2929**

Record & Return To:
**Corporation Service Company**
**P.O. Box 3008**
**Tallahassee, FL 32315**
**800-927-9801**

Prepared By:
PRP II Pals, LLC
7144 E Stetson Dr., Suite 410
Scottsdale, AZ 85251
Prepared by: Jack Krupcy

**FILE 1ST**

MS, Clay

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned,
**Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage
Loan Trust, Series 2012-12,** 500 Delaware Avenue, 11th Floor, Wilmington, DE, 19801, herein ("Assignor"), does
hereby grant, sell, assign, transfer and convey, without recourse unto **Stanwich Mortgage Acquisition Company II,
LLC,** c/o The Palisades Group LLC, 11755 Wilshire Blvd, Suite 1700, Los Angeles, CA 90025 herein ("Assignee")
that certain DEED OF TRUST recorded in **Clay County, MS** referenced below;

**Borrower: MARY ROBERTSON A/K/A MARY H ROBERTSON AND HUGH ROBERTSON**
**Original Lender: CITICORP TRUST BANK, FSB**
**Dated: 05/06/2004      Recorded: 05/11/2004**
**Book: 342    Page: 42**
**Loan Amount: $159,376.38**
Property:      **1702 NORTHWOOD FOREST BLVD, WEST POINT, MS 39773**

**Legal description is attached hereto and made a part hereof**

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon,
with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the document above-described.

**Book LM 477 Pg 32**
**Instrument 2929**

Page 2
Loan #: ▮▮▮▮▮▮

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective
_8/7/2015_

Christiana Trust, A Division of Wilmington Savings Fund
Society, FSB, as trustee for Stanwich Mortgage Loan Trust,
Series 2012-12
By: Stanwich Mortgage Acquisition Company II, LLC, its
appointed Attorney-In-Fact

assignor ph:
424-280-7560

assignee ph:
424-280-7560

By: _____
Name:   Troy Grande
Title:   Authorized Signatory

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed
the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On __8/7/2015__ before me, A. Werner, Notary Public, personally appeared Troy Grande, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

G. Werner
Notary Public: A. Werner
My Comm. Expires: 02/08/2019

A. WERNER
Commission # 2099443
Notary Public - California
Los Angeles County
My Comm. Expires Feb 8, 2019



Clay County Mississippi
Filed 09/08/2015 03:18 P
Book LM 477 Pg 32
Amy Berry, Chancery Clerk

Book LM 477 Pg 33
Instrument 2929

Record & Return To:
**Corporation Service Company**
**P.O. Box 3008**
**Tallahassee, FL 32315**
**800-927-9801**

Prepared By:
PRP II Pals, LLC
7144 E Stetson Dr., Suite 410
Scottsdale, AZ 85251
Prepared by: Jack Krupey

**FILE 1ST**

MS, Clay

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned,
**Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Stanwich Mortgage
Loan Trust, Series 2012-12**, 500 Delaware Avenue, 11th Floor, Wilmington, DE, 19801, herein ("Assignor"), does
hereby grant, sell, assign, transfer and convey, without recourse unto **Stanwich Mortgage Acquisition Company II,
LLC**, c/o The Palisades Group LLC, 11755 Wilshire Blvd, Suite 1700, Los Angeles, CA 90025 herein ("Assignee")
that certain DEED OF TRUST recorded in **Clay County, MS** referenced below;

**Borrower: MARY ROBERTSON A/K/A MARY H ROBERTSON AND HUGH ROBERTSON**
**Original Lender: CITICORP TRUST BANK, FSB**
**Dated: 05/06/2004      Recorded: 05/11/2004**
**Book: 342      Page: 42**
**Loan Amount: $159,376.38**
Property:      **1702 NORTHWOOD FOREST BLVD, WEST POINT, MS 39773**

**Legal description is attached hereto and made a part hereof**

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon,
with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms
and conditions of the document above-described.

**Book LM 477 Pg 32**
**Instrument 2929**

Page 2
Loan #: ███████████

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective
_8/7/2015_

assignor ph:
424-280-7560

assignee ph:
424.280-7560

Christiana Trust, A Division of Wilmington Savings Fund
Society, FSB, as trustee for Stanwich Mortgage Loan Trust,
Series 2012-12
By: Stanwich Mortgage Acquisition Company II, LLC, its
appointed Attorney-In-Fact

By: _____
Name:   Troy Grande
Title:   Authorized Signatory

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed
the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Los Angeles

On __8/7/2015__ before me, A. Werner, Notary Public, personally appeared Troy Grande, who proved to me on
the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the
instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is
true and correct.

WITNESS my hand and official seal.

G. Werner

Notary Public: A. Werner
My Comm. Expires: 02/08/2019

A. WERNER
Commission # 2099443
Notary Public - California
Los Angeles County
My Comm. Expires Feb 8, 2019



Clay County Mississippi
Filed 09/08/2015 03:18 P
Book LM 477 Pg 32
Amy Berry, Chancery Clerk

Book LM 477 Pg 33
Instrument 2929

Record & Return To:
**Corporation Service Company**
**P.O. Box 3008**
**Tallahassee, FL 32315**
**800-927-9801**

Prepared By:
PRP II Pals, LLC
7144 E Stetson Dr., Suite 410
Scottsdale, AZ 85251

Prepared by: Jack Krupey          **FILE 2ND**

Loan #: ▇▇▇▇▇▇▇▇
Deal Name: ▇▇▇▇▇▇
**MS, Clay**

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

### ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **Stanwich Mortgage Acquisition Company II, LLC**, c/o The Palisades Group LLC, 11755 Wilshire Blvd, Suite 1700, Los Angeles, CA, 90025, herein ("Assignor"), does hereby grant, sell, assign, transfer and convey, without recourse unto **US BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE PRP II PALS INVESTMENTS TRUST**, 7144 E STETSON DR., SUITE 410, SCOTTSDALE, AZ 85251 herein ("Assignee") that certain DEED OF TRUST recorded in **Clay** County, **MS** referenced below;

**Borrower: MARY ROBERTSON A/K/A MARY H ROBERTSON AND HUGH ROBERTSON**
**Original Lender: CITICORP TRUST BANK, FSB**
**Dated: 05/06/2004        Recorded: 05/11/2004**
**Book: 342    Page: 42**
**Loan Amount: $159,376.38**
Property:      **1702 NORTHWOOD FOREST BLVD, WEST POINT, MS 39773**

**Legal description is attached hereto and made a part hereof**

Together with the note(s) and obligations therein described or referred to, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said document referenced above.

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the document above-described.

**Book LM 477 Pg 34**
**Instrument 2930**

Page 2

IN WITNESS WHEREOF, Assignor has caused this Assignment to be executed and delivered, effective
*8/7/15* .

*grantor ph:*
*424-280-7560*

*grantee ph:*
*800-603-0836*

Stanwich Mortgage Acquisition Company II, LLC

By: _____
Name: Troy Grande
Title: Authorized Signatory

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of Los Angeles

On _*8/7/15*_ before me, G.H. Rodriguez, Notary Public, personally appeared Troy Grande, who proved to me on the basis of satisfactory evidence to be the person(s) whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: G.H. Rodriguez
My Comm. Expires: 03/08/2019

G. H. RODRIGUEZ
Commission # 2102494
Notary Public - California
Los Angeles County
My Comm. Expires Mar 8, 2019

**Book LM 477 Pg 35**
**Instrument 2930**

LEGAL DESCRIPTION

THE FOLLOWING DESCRIBED REAL ESTATE LOCATED IN CLAY COUNTY, MISSISSIPPI, TO-WIT:

COMMENCING AT A POINT ON THE WEST RIGHT-OF-WAY LINE OF U. S. HIGHWAY 45 ALTERNATE SAID POINT BEING 33 FEET WEST OF THE SOUTHEAST CORNER OF SECTION TWENTY-EIGHT (28), TOWNSHIP SIXTEEN (16) SOUTH, RANGE SIX (6) EAST, CLAY COUNTY, MISSISSIPPI; RUN THENCE
NORTH ALONG SAID RIGHT-OF-WAY LINE A DISTANCE OF 2660.5 FEET; RUN THENCE SOUTH 88 DEGREES 40 MINUTES WEST A DISTANCE OF 625 FEET; RUN THENCE NORTH 89 DEGREES 15 MINUTES WEST A DISTANCE OF 1215 FEET; RUN THENCE NORTH 87 DEGREES 05 MINUTES WEST A DISTANCE
OF 700 FEET; RUN THENCE SOUTH 89 DEGREES 43 MINUTES WEST A DISTANCE OF 849.5 FEET TO THE NORTHEAST CORNER OF A LOT HEREIN CONVEYED THE POINT OF BEGINNING OF THIS DESCRIPTION; FROM SAID POINT OF BEGINNING RUN THENCE SOUTH 0 DEGREES 17 MINUTES EAST A
DISTANCE OF 822.6 FEET TO THE NORTH RIGHT-OF-WAY OF A GRAVEL ROAD; RUN THENCE WESTERLY ALONG SAID RIGHT-OF-WAY A DISTANCE OF 158.6 FEET; RUN RUN THENCE NORTH 0 DEGREES 17 MINUTES WEST A DISTANCE OF 827.5 FEET; RUN THENCE NORTH 89 DEGREES 43 MINUTES EAST A DISTANCE OF 158.5 FEET TO THE POINT OF BEGINNING, BEING FURTHER DESCRIBED AS LOT ELEVEN (11) OF NORTHWOOD FORREST SUBDIVISION AS SHOWN BY A MAP AND PLAT OF SAID SUBDIVISION AS DRAWN BY TUMLINSON ENGINEERS, INC., OF WEST POINT, MISSISSIPPI, BEING LOCATED IN THE SOUTHEAST CORNER OF SECTION TWENTY-EIGHT (28), TOWNSHIP SIXTEEN (16) SOUTH, RANGE SIX (6) EAST, CLAY COUNTY, MISSISSIPPI, AND CONTAINING 3.00 ACRES, MORE OR LESS.
INDEXING INSTRUCTIONS:
LOT 77, WESTWOOD SUBDIVISION, PART 3.

BY FEE SIMPLE DEED FROM WILLIE DAVID MCCLUNG AND WIFE, MARY J. MCCLUNG AS SET FORTH IN BOOK 227, PAGE 506 DATED 08/16/2000 AND RECORDED 08/18/2000, CLAY COUNTY RECORDS, STATE OF MISSISSIPPI.



Clay County Mississippi
Filed 09/08/2015 03:35 P
Book LM 477 Pg 34
Amy Berry, Chancery Clerk

Book LM 477 Pg 36
Instrument 2930



Record & Return To:
**Corporation Service Company**
P.O. Box 3008
Tallahassee, FL 32315-3008
800-645-0683
Prepared By: Kim Cloen

SO.ESSEX #247 Bk:34364 Pg:385
09/10/2015 12:38 DIS Pg 1/2

Deal Name:Arbor Commercial Mortgage -
Asset Management
MA  Essex South - Registered Land

### SATISFACTION OF MULTIFAMILY MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

FOR VALUABLE CONSIDERATION RECEIVED, the receipt and sufficiency of which is hereby acknowledged, the undersigned, **Fannie Mae** does hereby certify that a certain MULTIFAMILY MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING, by **124 Green Street LLC** (collectively the "Borrower") is hereby RELEASED AND SATISFIED IN FULL and the real estate described therein is fully released as described below:

**Original Lender: Arbor Commercial Funding, LLC  Dated: 09/30/2011  Recorded: 09/30/2011; 09/30/2011
Book: 30700**
**Page: 137  Instrument: 2011093000471; 523509  in Essex South - Registered Land County, MA**
**Property:       124 Green Street Apartments, Lynn, MA 01902         Certificate #: 73601**
**Legal description is attached hereto and made a part thereof.**

The party executing this instrument is the present holder of the document described herein.

IN WITNESS WHEREOF, this instrument was executed and delivered by the undersigned effective 08/04/2015.

Fannie Mae

By:      _____
Name:      **Tigist Seleshi**
Title:      Assistant Vice President

State of District of Columbia  VIRGINIA
County of Washington VIRGINIA

On 08/04/2015 before me, RONALD CALVIN HALL Notary Public, personally appeared Tigist Seleshi , ASSISTANT Vice President of Fannie Mae who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her signature on the instrument the person, or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Notary Public: _____
My commission expires: 8/31/2018

RONALD CALVIN HALL
NOTARY PUBLIC
REG. #7191630
MY COMMISSION
EXPIRES
08/31/2018
WEALTH OF VIRGINIA

## EXHIBIT "A"

## LEGAL DESCRIPTION

The land in Lynn, Essex County, Massachusetts, together with the buildings thereon, bounded and described as follows:

Parcle 1

The land with the buildings thereon situated on Green Street, Lynn, Essex County, Massachusetts, bounded and described as follows:

SOUTHWESTERLY    by Green Street, one hundred six and 86/100 (106.86) feet;
NORTHWESTERLY    by land now or formerly of Innocente Talamini, et al, one hundred twenty and 24/100 (120.24) feet;
NORTHEASTERLY    by lands now or formerly of Addie M. Usher, of Lena C. Bacheller and of charles E. Lord, one hundred seven and 44/100 (107.44) feet;
SOUTHEASTERLY    by land now or formerly of Fred H. Nichols et al Trs., one hundred one and 10/100 (101.10) feet.

All of said boundaries are determined by the Land Court to be located as shown upon plan numbered 5511-A, drawn by Eastman & Bradford, Surveyors, dated July 10, 1915, as modified and approved by the Court, filed in the Land Registration Office, a copy of a portion of which is filed with original Certificate of Title #1889 in said Registry.

Parcel 2

The land situated on Green Street, Lynn, Essex County, Massachusetts, bounded and described as follows:

SOUTHWESTERLY    by Green Street, fifty-eight and 00/100 (58.00) feet;
NORTHWESTERLY    by land now or formerly of Cove, one hundred one and 31/100 (101.31) feet;
NORTHEASTERLY    by lands now or formerly of Estes, fifty-eight (58) feet; and
SOUTHEASTERLY    by lands now or formerly of Mower, et al, ninety-one and 00/100 (91.00) feet.

title ref: 17691-175



Document: 565339

DIS

ESSEX SOUTHERN DISTRICT REGISTRY OF DEEDS

RECEIVED FOR REGISTRATION

On: 9/10/2015  12:29 PM

Noted on Cert: 83374 BOOK: 517

COMMONWEALTH OF MASSACHUSETTS
ESSEX REGISTRY OF DEEDS, SO. DIST., SALEM, MASS
ESSEX SS        Sept      10        20 15
A TRUE COPY OF RECORD:
BOOK 34364 PAGE 285
ATTEST:

REGISTER

COMMONWEALTH OF MASSACHUETTS
LAND COURT
ESSEX REGISTRY OF DEEDS, SO. DIST.
SALEM, MASS

ESSEX.S.S. Sept   10        20 15
A TRUE COPY OF DOCUMENT   565339
ATTEST:

Assistant Recorder